# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, A.C. RUGH, T.H. CAMPBELL**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**BRANDON G. DARNALL**
**HOSPITALMAN (E-3), U.S. NAVY**

**NMCCA 201500010**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 22 August 2014.
**Military Judge:** LtCol Leon J. Francis, USMC.
**Convening Authority:** Commanding General, 1st Marine Division, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol Vincent G. Laratta, USMC.
**For Appellant:** LT Christopher C. McMahon, JAGC, USN; LT Jennifer Pike, JAGC, USN.
**For Appellee:** Maj Suzanne M. Dempsey, USMC; Capt Cory A. Carver, USMC.

**12 July 2016**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

RUGH, Judge:

A panel of members with enlisted representation, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of conspiracy to import and distribute controlled substances; making false official statements; importation, manufacture, possession with intent to distribute, and distribution of controlled substances or controlled substance analogues; and using a communication facility in furtherance of a conspiracy in violation of Articles 81, 107, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 912a, and 934. The members sentenced the appellant to six years' confinement, reduction to pay-grade E-1, and a dishonorable discharge. The convening authority (CA) approved the adjudged sentence,

suspended confinement in excess of five years, and, except for the dishonorable discharge, ordered the sentence executed.

The appellant now raises two assignments of error (AOE): (1) that the military judge abused his discretion in finding the appellant's apprehension reasonable under the Fourth Amendment to the Constitution, thus admitting fruits of an illegal apprehension; and (2) that the Government's charging scheme resulted in an unreasonable multiplication of charges. We disagree with the first AOE, agree in part with the second, and take curative action below.

## BACKGROUND

From October 2011 to March 2012, the appellant built a criminal operation importing, manufacturing, and distributing controlled substances including various forms of steroids and the designer drug, methylone—a substitute for methylenedioxymethamphetamine, otherwise known as MDMA or "molly," which could also be relabeled and sold as "bath salts." The appellant communicated via text and other smart-phone applications with a supplier in China and middlemen and customers in the United States coordinating the importation and distribution of these substances. He provided the methylone to over 100 "smoke shops" near Camp Pendleton, California, which then cut, packaged, and marketed these "bath salts" for sale.

The appellant's criminal enterprise was first discovered in November 2011 when Federal Customs and Border Control agents intercepted a package from China addressed to the appellant at Twentynine Palms.[1] The package contained more than two pounds of dimethylone, an analogue of several controlled substances in the cathinone family with a substantially similar effect to methylone. Methylone, which has no accepted non-contraband use, became a schedule I controlled substance on 21 October 2011. Dimethylone became a schedule I controlled substance on 7 March 2014.

Based on the addressee, "Brandon Darnall" and the Twentynine Palms address, the Custom and Border Control agents believed that the recipient was a military servicemember and passed the package to military investigators for action. A Marine Criminal Investigative Division (CID) agent was assigned the case. A public records search disclosed three persons with the same name as the appellant in San Bernardino County, California, but only one of the three was a servicemember assigned to the base at Twentynine Palms—the appellant. The CID agent drove to the address on the package and found the dwelling empty with a "For Rent" sign posted.

Based on this information, the CID agent received permission to deliver the package to the appellant at the regimental mailroom and then apprehend him.[2] The CID agent hoped the delivery would assist him in gauging the appellant's reaction, showing either acceptance or

---

[1] Twentynine Palms is a city in San Bernardino County, California, and home to Marine Corps Air Ground Combat Center (MCAGCC) Twentynine Palms.

[2] Before delivery to the appellant, the dimethylone was replaced with a mixture of baby powder and flour.

confusion regarding the package. However, when he went to the mailroom as directed, the appellant merely reacted as if he didn't remember ordering the package.[3]

As the appellant left the regimental mailroom with the package, three CID agents stopped him at Taser-point, handcuffed him, and escorted him to CID headquarters. There, he was informed of and waived his rights, agreeing to an interview. During this interview, the appellant admitted to previously purchasing methylone from China to sell to local "smoke shops" for the production of "spice" and "bath salts." But he denied importing methylone at any time after it was listed as a schedule I controlled substance in October 2011. These admissions were not recorded or reduced to writing because a base power outage affected the CID spaces.

After the interview, the appellant granted permission to search his barracks room and car but declined permission to search his cell phone. The CID agent took protective possession of the phone and was then granted command authorization by the Battalion Commander to search it for evidence. The subsequent search uncovered several text messages, audio and video recordings, and pictures outlining the appellant's efforts to import methylone and to possess, manufacture, and distribute various steroids. The pictures included images of the appellant holding large rolls of cash, vials of substances labeled as steroids, and a brick of a white powder similar in appearance to packaged methylone. The appellant was interviewed again the next day after the power outage. He again admitted to importing methylone for resale, and this statement was reduced to writing.

A subsequent records review uncovered another package addressed to the appellant that arrived from China in October 2011, was seized as suspicious, and then tested positive for methylone. This package was destroyed by Customs and Border Control agents prior to the arrival of the dimethylone package in November 2011.

DISCUSSION

**Probable Cause to Apprehend and Fruits of the Apprehension**

The appellant asserts that the military judge abused his discretion by relying on a clearly erroneous fact when ruling on a motion to suppress evidence stemming from the appellant's apprehension. Absent reliance on the erroneous fact, the appellant argues, probable cause did not exist to apprehend him.

We review rulings on a motion to suppress evidence for an abuse of discretion. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (citing *United States v. Monroe*, 52 M.J. 326, 330 (C.A.A.F. 2000)). Findings of fact are reviewed for clear error, while conclusions of law are reviewed *de novo*. *See United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995) (citing *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993); *United States v. Mejia*, 953 F.2d 461, 464-65 (9th Cir. 1991)).

---

[3] Record at 732.

If we conclude that a finding of fact is clearly erroneous, we excise the fact from our analysis.  In the case of a military judge's determination on probable cause, we then assess whether there was sufficient evidence to support probable cause absent the erroneous fact.  *See United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001) ("[W]hen there are misstatements or improperly obtained information, we sever those from the affidavit and examine the remainder to determine if probable cause still exists.") (citation omitted).  "'Even if a false statement or omission is included . . . the Fourth Amendment is not violated if the [remaining facts] would still show probable cause after such falsehood or omission is redacted or corrected.'"  *Id.* (quoting *Technical Ordnance, Inc., v. United States*, 244 F.3d 641, 647 (8th Cir. 2001)).

"A factual finding is only clearly erroneous where there exists a 'definite and firm conviction that a mistake has been committed.'" *United States v. Haridat*, No. 201100275, 2012 CCA LEXIS 4, at *4, unpublished op. (N.M.Ct.Crim.App. 10 Jan 2012) (quoting *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948))).

Here, the military judge found that the CID agent "was able to determine, along with his fellow case agents working the case with him, that the address on the package was to a residence previously occupied by the accused, but had since been vacated."[4]  The military judge then concluded:

> [The CID agent] had probable cause that a crime had been committed by a U.S. Sailor, namely the importation of a controlled substance analogue from China in violation of SECNAVINST 5300.28E.  He also had probable cause that the [appellant] was the U.S. Sailor who committed the offense. The [appellant's] name was on the package.  *While the address associated with the package was of a previous address of the [appellant], it was still an address the [appellant] had at one time while assigned to MCAGCC, Twentynine Palms, California.*  Due to the fact that the [appellant], was a corpsman stationed at the MCAGCC and it was sent to him *but at a previous address*, it was a reasonable inference that the package was meant for the [appellant]. [5]

The appellant argues, and the Government acknowledges, that the military judge's finding that the appellant was a previous occupant of the Twentynine Palms address is clearly erroneous.[6]  We agree, and we must now determine whether, in the absence of this finding, sufficient facts existed at the time of the arrest to establish probable cause.

---

[4] Appellate Exhibit XLIV at 4.

[5] *Id.* at 15 (emphasis added).

[6] Sometime during the investigation, the CID agent searched for prior residents associated with the Twentynine Palms address.  His search uncovered a Navy corpsman, and friend of the appellant, who testified at court-martial that the appellant asked to receive packages at the corpsman's Twentynine Palms address. But the CID agent never asked the appellant about the corpsman during the post-apprehension interviews, so it is likely the CID agent did not possess this information until sometime after the appellant's arrest. *See* Record at 791, 817.

4

"We have long understood that the Fourth Amendment's protection against 'unreasonable . . . seizures' includes seizure of the person." *California v. Hodari*, 499 U.S. 621, 624 (1991) (citing *Henry v. United States*, 361 U.S. 98, 100 (1959)). An arrest or its military equivalent, apprehension, must be supported by probable cause. *Rodriguez*, 60 M.J. at 247 (citing *Hodari*, 499 U.S. at 626); *Wong Sun v. United States*, 371 U.S. 471 (1963); *Brown v. Illinois*, 422 U.S. 590 (1975)). "Probable cause requires more than bare suspicion, but something less than a preponderance of the evidence." *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007).

The "probable cause" standard is further elucidated by RULE FOR COURTS-MARTIAL 302(c), which provides that "[a] person subject to the code or trial thereunder may be apprehended for an offense triable by court-martial upon probable cause to apprehend. Probable cause to apprehend exists when there are reasonable grounds to believe that an offense has been or is being committed and the person to be apprehended committed or is committing it." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

At the time of the appellant's arrest, the CID agent had the following facts at his disposal: (1) that Customs and Border Control agents seized a package mailed from China containing more than two pounds of dimethylone, a Schedule I controlled substance analogue; (2) that the package was addressed to "Brandon Darnall" at a rental property near MCAGCC, Twentynine Palms; (3) that there were only three "Brandon Darnalls" located in the entirety of San Bernardino County, California; (4) that the appellant was the only "Brandon Darnall" of the three who was a servicemember; and (5) that the appellant was stationed on board MCAGCC, Twentynine Palms.

We find these facts sufficient to establish probable cause.[7]

The appellant further argues that his statements to CID and the results of the command authorized search of his cell phone should have been suppressed because they "flowed directly from the unlawful apprehension."[8] Because we conclude that there was sufficient probable cause to apprehend and the military judge did not abuse his discretion in ruling on the motion to suppress, this argument also fails.

**Unreasonable Multiplication of Charges**

We review a military judge's unreasonable multiplication of charges ruling for an abuse of discretion. *United States v. Campbell,* 71 M.J. 19, 22 (C.A.A.F. 2012). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178,

---

[7] In his brief, the appellant relies on *United States v. Dickey-Bey*, 393 F.3d 449 (4th Cir. 2004). However, this case is easily distinguishable from *Dickey-Bey*. There, a "controlled delivery" was necessary to determine the identity of the anonymous recipient of contraband mailed to a post office box. Here, the identity of the intended recipient was already known because the package was expressly addressed to "Brandon Darnall," making the matter of the "controlled delivery" a red herring as it relates to the issue of probable cause to apprehend in this case.

[8] Appellant's Brief dated 17 Dec 2015 at 29.

5

187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)). This standard is "a strict one, calling for more than a mere difference of opinion." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010). To be overturned, the military judge's action must be "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997) (additional citation omitted).

However, if an appellant has forfeited a right by failing to raise it at trial, we review for plain error. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008) (citing *United States v. Olano*, 507 U.S. 725, 733-34 (1993); *see United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (applying forfeiture and waiver principles to the concept of unreasonable multiplication of charges). To be plain error, the appellant has the burden of persuading us that there was error, that the error was clear or obvious, and that the error materially prejudiced a substantial right of the appellant. *United States v. Akbar*, 74 M.J. 364, 392-93 (C.A.A.F. 2015) (citing *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014), *reconsideration denied*, 73 M.J. 237 (C.A.A.F. 2014)).

Under either standard of review, "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). We consider five non-exclusive factors to determine whether there is an unreasonable multiplication of charges:

> (1) Whether the appellant objected at trial;
>
> (2) Whether each charge and specification is aimed at distinctly separate criminal acts;
>
> (3) Whether the number of charges and specifications misrepresents or exaggerates the appellant's criminality;
>
> (4) Whether the number of charges and specifications unreasonably increases the appellant's punitive exposure; and,
>
> (5) Whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges.

*See United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001).

No one factor is a prerequisite. Instead, these factors are weighed together, and "one or more . . . may be sufficiently compelling[.]" *Campbell,* 71 M.J. at 23. Charges may constitute unreasonable multiplication either as applied to findings or as applied to sentencing. *Id.*

Finally, we are cognizant of CAAF's recent guidance in *United States v. Chin*, 75 M.J. 220, 222 (C.A.A.F. 2016), directing us to separately "conduct a plenary review and… 'affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be

approved.'" (quoting Art. 66(c), UCMJ) (additional citations omitted). Hewing to this directive, we will approve so much of the findings and sentence as are consistent with our analysis here.

*Specifications 3 and 4 of Charge I*

Specification 3 of Charge I alleged that between 29 November 2011 and 22 February 2012 the appellant conspired with a person known as "Teddy Grams" to import methylone into the United States. Specification 4 of Charge I alleged that during the same dates the appellant also conspired with "Teddy Grams" to distribute methylone. The Government alleged the same or similar overt acts in furtherance of both conspiracies with "Teddy Grams": that the appellant placed orders for or received the methylone; that he transferred money via electronic wire transfer; that he communicated pricing and tracking information about the methylone shipment and electronic wire transfer; and that he communicated addressee information for the shipment of the methylone.

Although during trial the appellant raised numerous other objections to unreasonable multiplication of charges, he did not explicitly object to Specifications 3 and 4 of Charge I. As a result, we will apply forfeiture and evaluate the record for plain error. Here the Government concedes that, in the absence of waiver, finding the appellant guilty of both Specifications 3 and 4 of Charge I would be unreasonable.[9]

"A single agreement to commit multiple offenses ordinarily constitutes a single conspiracy." *United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000); *see United States v. Mack*, 58 M.J. 413, 418 (C.A.A.F. 2003) (quoting *Braverman v. United States*, 317 U.S. 49, 53 (1942)) (noting that "one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one"). Here the record clearly demonstrates one agreement between the appellant and "Teddy Grams" to import and distribute methylone. As a result, we find plain error and consolidate the two conspiracy allegations into a single specification.

As to the effect of consolidation on the sentence, Courts of Criminal Appeals (CCAs) can often "modify sentences 'more expeditiously, more intelligently, and more fairly' than a new court-martial[.]" *United States v. Winckelmann*, 73 M.J. 11, 13 (C.A.A.F. 2013) (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). In such cases, CCAs "act with broad discretion when reassessing sentences." *Id.* A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

Under all the circumstances presented, we can confidently and reliably determine that absent the error, the members would have adjudged the same sentence. The appellant was convicted on 26 other specifications, including two other conspiracy offenses. Consolidation of the two specifications would not have had a major impact on the maximum sentence available at trial in the context of the sentence adjudged. The maximum confinement as agreed on by the parties based on the findings of guilty was 318 years. The consolidated specification would have

---

[9] Appellee's Answer dated 18 Apr 2016 at 40.

7

reduced that maximum confinement by 15 years. And the appellant was sentenced to only six years' confinement.[10] In that context, the error in convicting the appellant of two conspiracy specifications was not prejudicial as to the sentence. As a result, we conclude that the approved sentence is an appropriate punishment for these offenses as consolidated and this offender— satisfying the *Sales* requirement that the approved sentence not only be purged of error, but appropriate. *Sales*, 22 M.J. at 308.

*Charge I and Additional Charge II*[11]

Charge I and its three specifications[12] alleged three separate conspiracies to, respectively, distribute Testosterone Cypionate with a person known as "Rich"; to import methylone with a person known as "Peter"; and to import and distribute methylone with "Teddy Grams." Each specification alleged four to seven overt acts, some of which included the use of text messages to communicate logistics with the appellant's suppliers, sellers, and other co-conspirators. For example, in Specification 1, two of the six overt acts alleged were text communications between the appellant and "Rich" regarding payments and distribution plans for the Testosterone Cypionate.

Additional Charge II and its seven specifications alleged violations of 21 U.S.C. § 843(b), knowingly or intentionally using a communication facility in committing, causing, facilitating, or helping bring about the conspiracy to import a controlled substance into the United States. As notice of the nature of the "communication facility" alleged, each specification identified specific text messages between the appellant and "Rich," "Peter," or "Teddy Grams" that were used in causing, facilitating or helping the respective conspiracy. For example, Specification 7 of Additional Charge II identified several specific text messages between the appellant and "Rich" discussing when the Testosterone Cypionate would be ready for sale.

Under this charging scheme, the text messages identified as causing, facilitating or helping the three separate conspiracies were also alleged as some of the several overt acts taken in furtherance of those conspiracies.

At trial the defense objected and sought dismissal of Additional Charge II as an unreasonable multiplication of charges. Applying a *Quiroz* analysis, the military judge denied the motion. The military judge found that each specification addressed "distinctly separate criminal acts"; that the number of charges and specifications did not exaggerate the appellant's criminality; that the charging scheme did not unreasonably increase the appellant's punitive

---

[10] Subsequently, the CA suspended all confinement in excess of five years for a period of one year.

[11] The original Additional Charge II was dismissed and Additional Charge III was renumbered to Additional Charge II. Although the appellant refers to the additional charges by their original number, we refer to the charges as they appear in the CA's action.

[12] Charge I originally included four separate specifications. Our action above consolidated Specifications 3 and 4 of Charge I, leaving only three specifications for consideration.

exposure; and that there was no evidence of prosecutorial overreach.[13]  Additionally, the military judge noted Manual for Courts-Martial, United States (2012 ed.), Part IV, ¶5(c)(8) which provides:

> A conspiracy to commit an offense is a separate and distinct offense from the offense which is the object of the conspiracy, and both the conspiracy and the consummated offense which was its object may be charged, tried, and punished. The commission of the intended offense may also constitute the overt act which is an element of the conspiracy to commit that offense.

He concluded that the conspiracy to import and distribute controlled substances and using communications facilities to carry out that conspiracy encompassed independent offenses which were not an unreasonable multiplication of charges.  Having carefully reviewed the record, we find that the military judge applied the correct law and that his findings of fact were not clearly erroneous. We hold that he did not abuse his discretion in declining to dismiss Additional Charge II or merge the specifications for sentencing.

*Specifications 2 and 3 of Charge IV*[14]

Specification 2 of Charge IV alleged the appellant imported 1,000 grams of dimethylone in violation of 21 U.S.C. §§ 952 and 960.  Specification 3 of Charge IV alleged the appellant possessed with intent to distribute the same 1,000 grams of dimethylone in violation of 21 U.S.C. §§ 841(a)(1) and 846.  At trial, the appellant objected to several specifications, including Specification 2 and Specification 3 of Charge IV, as an unreasonable multiplication of charges.[15] After citing *Campbell*, the military judge granted the defense's motion as to some of the offending specifications, but ruled that Specification 2 and 3 of Charge IV were not an unreasonable multiplication of charges because, "ultimately, one is something that's actually accomplished, importation, vice another is an inchoate crime, which is meaning that there is some sort of substantial step that is being taken to accomplish something.  They have different—completely different aims."[16]

Here as above, we find that the military judge applied the correct law, citing to *Campbell* and identifying the *Quiroz* factors prior to ruling on the record.[17]  We also find that his findings of fact were not clearly erroneous, as the importation of a controlled substance into the United

---

[13] AE XXV at 6.

[14] Original Specifications 2 and 3 of Charge IV were dismissed and Specifications 4 and 5 of Charge IV were subsequently renumbered as 2 and 3 respectively.  Here, we refer to the renumbered specifications as they appear in the CA's action.

[15] Record at 954-55.

[16] *Id.* at 955.  When ruling, the military judge inartfully discussed whether the charges were "multiplicious." However, in context, it is clear from the record that the military judge was referring to unreasonable multiplication of charges as conceived in *Quiroz* and *Campbell*.

[17] *Id.* at 952.

States and the separate possession of that substance with the future ambition of distributing that substance to others are aimed at two distinctly separate criminal acts. Such a charging scheme neither exaggerates the criminality of the appellant nor subjects him to unreasonable punitive exposure. Finally, there was no indication of prosecutorial overreach. As a result, we hold that the military did not abuse his discretion in declining to merge the specifications.

**Court-Martial Order Errors**

Although not raised by the parties, we note the Court-Martial Order (CMO) incorrectly identifies the time period involved in Specification 1 of Charge IV, which should indicate on or about 1 February 2011, vice February 2014, to on or about 1 October 2011.

We test error in CMOs under a harmless error standard. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). The appellant alleges no prejudice resulting from this error, and we find none. However, the appellant is entitled to accurate court-martial records. *Id.* Accordingly, we order the necessary corrective action in our decretal paragraph.

CONCLUSION

The supplemental CMO will reflect that Specifications 3 and 4 under Charge I were merged and that the appellant was found guilty of the following merged Specification 3 under Charge I:

> In that Hospitalman Brandon G. Darnall, U.S. Navy, while on active duty, did, at an unknown location, between on or about 29 November 2011 and on or about 22 February 2012, conspire with an individual known as "Teddy Grams" to commit an offense under the Uniform Code of Military Justice, to wit: wrongful importation of methylone, a schedule I controlled substance, into the customs territory of the United States, and wrongful distribution of said controlled substance, and in order to effect the object of the conspiracy, the said Hospitalman Darnall performed one or more of the following acts:
>
> > a. Placed orders for said controlled substance,
> > b. Transferred money via electronic wire transfer,
> > c. Received shipments of said controlled substance,
> > d. Communicated pricing information for distribution of said controlled substance,
> > e. Communicated tracking information for shipments of said controlled substance,
> > f. Communicated tracking information for electronic wire transfer payments,
> > g. Communicated addressee information for said controlled substance.

Additionally, Specification 1 of Charge IV, should indicate "on divers occasions, between on or about 1 February 2011 and on or about 1 October 2011."

The findings and sentence as approved by the convening authority are affirmed.

Senior Judge FISCHER and Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court