Douglas W. STAGEMEYER, individually and as parent and next friend; and Matthew D. Stagemeyer, by and through his parent and next friend, Plaintiffs,

v.

COUNTY OF DAWSON, NEBRASKA; Kurt R. McBride, individually and in his official capacity as Deputy County Attorney of Dawson County, Nebraska; Elizabeth F. Waterman, individually and in her official capacity as County Attorney of Dawson County, Nebraska; Lt. Gregory L. Vandenberg, individually and in his official capacity as a Lieutenant with the Nebraska State Patrol; Mike Dowling, individually and in his official capacity as a Trooper with the Nebraska State Patrol; Kenneth C. Ayers, individually and in his official capacity as a Trooper with the Nebraska State Patrol; C.T. Phaby, individually and in his official capacity as a Trooper with the Nebraska State Patrol; K. Moody, individually and in his official capacity as a Trooper with the Nebraska State Patrol; D. Covert, individually and in his official capacity as a Trooper with the Nebraska State Patrol; C. Carter, individually and in his official capacity as a Trooper with the Nebraska State Patrol; Capt. Parrish, individually and in his official capacity as a Captain with the Nebraska State Patrol; and Tom Nesbitt, individually and in his official capacity as Superintendent with the Nebraska State Patrol, Defendants.

No. 7:01CV5003.

United States District Court,
D. Nebraska.

March 25, 2002.

John F. Recknor, Randall L. Wertz, Recknor & Associates, Lincoln, NE, for Plaintiffs.

Randall L. Goyette, Baylor, Evnen Law Firm, Lincoln, NE, Melanie J. Whittamore-Mantzios, Atty. General's Office, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Plaintiffs, a former school board president and his son, bring this action for money damages against state police officers and county attorneys who allegedly violated Plaintiffs' rights under federal and state law when police performed an illegal search and seizure at a New Year's Eve party that led to criminal prosecution, but not conviction, of both Plaintiffs. Pending before the court is a Fed.R.Civ.P. 12(b)(6) motion to dismiss[1] (filing 20) filed by defendants County of Dawson; Kurt R. McBride, individually and in his official capacity as Deputy County Attorney; and Elizabeth F. Waterman, individually and in her official capacity as County Attorney of Dawson County, Nebraska. Also pending is a motion for summary judgment filed by defendants McBride and Waterman individually based on the merits, qualified immunity, and "state law good faith immunity." (Filing 36.)[2]

## I. FACTS

### A. The Parties

Defendant Dawson County is a political subdivision of the State of Nebraska; defendant Elizabeth F. Waterman is the Dawson County Attorney; and defendant Kurt R. McBride is the Dawson Deputy County Attorney. (Filing 41, Amended Complaint ¶¶ 8–10; Filing 21, Aff. Elizabeth F. Waterman ¶ 1; Filing 21, Aff. Kurt R. McBride ¶ 1.) Plaintiffs allege that the defendants were acting under the "color of law," both individually and in their official capacities, and as "policy makers." (Filing 41 ¶¶ 8–10.) Plaintiff Douglas Stagemeyer was the president of the Eustice–Farnham School Board at the relevant time, and plaintiff Matthew Stagemeyer is Douglas Stagemeyer's son.

---

1. The defendants submitted evidence with their 12(b)(6) motion (filing 21). Fed.R.Civ.P. 12(b) provides in part: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Because the parties have had the opportunity to present pertinent evidence as to each of Plaintiffs' claims in connection with the defendants' subsequent motion for summary judgment (filing 36), I shall treat the 12(b)(6) motion (filing 20) as one for summary judgment as well and I shall consider the evidence submitted therewith.

2. Defendants filed a motion (filing 43) requesting that its motions to dismiss and for summary judgment apply to Plaintiffs' amended complaint (filing 41). The court granted Defendants' motion (filing 49).

## B. The Incident

Plaintiffs allege that on December 31, 1999, they were invited guests at David and Janet Bendler's residence, Plum Creek Canyon # 12–C, Dawson County, Nebraska. (Filing 41, Amended Complaint; Filing 46, Aff. Douglas W. Stagemeyer ¶¶ 2–3.) At approximately 11:40 p.m. on that date, Nebraska State Patrol Lieutenant Vandenberg received a dispatch from the Patrol's North Platte, Nebraska, office informing him that an anonymous female caller had reported that a party at which minors were consuming alcohol was taking place at the above address. At approximately 12:30 a.m. on January 1, 2000, Lieutenant Vandenberg and five other Nebraska State Patrol Troopers arrived at the Bendler residence, at which time Lieutenant Vandenberg observed several vehicles parked adjacent to a metal outbuilding. Some of the vehicles were surrounded or occupied by individuals that appeared to be minors, several of whom ran away from the officers as they got out of their patrol vehicles. The individuals who ran from the officers either entered the metal outbuilding, entered the Bendler residence, or ran from the property. (Filing 27, Aff. Gregory L. Vandenberg ¶¶ 2–5.)

The officers escorted several of the individuals to the outbuilding for identification. At that time, Lieutenant Vandenberg observed the following:

I observed a beer can lying on the ground outside the outbuilding. The interior of the outbuilding contained several chairs and card tables, a long table of food and snacks, a stereo system, a poker chip container, and numerous empty and partially full beer cans and bottles. There was a large garbage can in the outbuilding that was nearly full of empty beer cans and bottles. On the floor under the food table were two partially full garbage bags that also contained a combination of empty beer cans and bottles. A partially full liter bottle of Jack Daniels was found in a corner of the outbuilding.

There were puddles of alcohol on the floor of the outbuilding. There were two separate puddles of vomit inside the building and ... another puddle of vomit outside the building on the concrete driveway.

(*Id.* ¶¶ 6–7.)

The officers identified 34 minors ranging from 14 to 19 years of age. Of the preliminary breath tests that were obtained from each minor, all but two tested positive for alcohol. One of the minors testing negative for alcohol was plaintiff Matthew Stagemeyer. (Filing 46, Aff. Douglas W. Stagemeyer ¶ 14.) The officers then accompanied seven "minors with control over the numerous vehicle's [sic] parked on the Bendler property" to their vehicles, in which the officers found illegal fireworks and numerous cans and bottles of beer and hard liquor. (Filing 27, Aff. Gregory L. Vandenberg ¶ 8.)

Lieutenant Vandenberg has testified by affidavit that during his investigation at the Bendler residence, plaintiff Douglas Stagemeyer engaged in conversation with Vandenberg as follows:

[P]laintiff Douglas Stagemeyer approached me and engaged in unsolicited conversation. Mr. Stagemeyer told me that he was a guest of the Bendlers who host a New Years [sic] eve party each year. Mr. Stagemeyer reported that at approximately 8:30 p.m., he went outside the Bendler's residence to the outbuilding and discovered minors drinking alcohol and attempting to conceal it. Mr. Stagemeyer then stated that he was sorry that he did not confront the minors about their alcohol consumption, but explained that he didn't want to embarrass

his own children who were in attendance at the party.

Mr. Stagemeyer explained that his son, Matthew Stagemeyer, age 18, while present at the party, had not consumed any alcohol, although his daughter, Erica Stagemeyer, age 18, had consumed alcohol at the party. Mr. Stagemeyer further explained that although his son did not care that he came to the outbuilding, his daughter didn't like it when he was present at parties that she attended. Mr. Stagemeyer also stated that after seeing the minors consuming alcohol in the outbuilding, he returned to the Bendler residence, resumed watching television with the Bendlers, and later participated in shooting off fireworks. At one point, Mr. Stagemeyer asked me if it were true that by sucking on a penny one could defeat a breath test for alcohol, and stated that he had witnessed some of the minors doing that earlier in the evening.

(Filing 27, Aff. Gregory L. Vandenberg ¶¶ 9–10.)

Plaintiff Douglas Stagemeyer disputes much of Lieutenant Vandenberg's version of events, stating that: one of the buildings on the Bendler property was set up for an alcohol-free New Year's Eve party for area teenagers, including several cans of pop, brown bottles of creme soda and root beer, and bottles of non-alcoholic champagne; Douglas Stagemeyer did not observe beer cans and bottles outside or inside the building, nor did he observe puddles of alcohol and vomit on the floor; and the state troopers ordered that the adults who were in the Bendler's home (including Douglas Stagemeyer) gather in the building, after which the troopers searched vehicles that were parked on the edge of a public road, which was 50 yards from the outbuilding. Stagemeyer claims that the troopers brought the products of their warrantless vehicle searches to the outbuilding and that Trooper Dowling escorted Stagemeyer to Lieutenant Vandenberg and instructed Stagemeyer to speak to the Lieutenant. Stagemeyer told Vandenberg that he was a guest at the Bendler residence, but Stagemeyer did not tell Vandenberg that he had observed teenagers drinking alcohol during the evening, nor did he apologize for not confronting the minors about drinking alcohol. Stagemeyer "never allowed or encouraged juveniles to engage in behaviors such as consuming alcohol." (Filing 46, Aff. Douglas W. Stagemeyer ¶¶ 1–21, 39.)

The incident described above occurred without a search warrant and without consent of the property owners or Plaintiffs. (Filing 41, Amended Complaint ¶ 20; Filing 46, Aff. Douglas W. Stagemeyer ¶ 7.) The officers did not issue any citations after their investigation that evening, although Lieutenant Vandenberg told the partygoers and parents who had arrived to pick up their minor children that all information collected would be forwarded to the Dawson County Attorney's office for possible prosecution. None of the police officers contacted or conferred with anyone from the Dawson County Attorney's office—including defendants Waterman and McBride—before or during the investigation. (Filing 27, Aff. Gregory L. Vandenberg ¶¶ 11–12; Filing 21, Aff. Elizabeth F. Waterman ¶ 5; Filing 21, Aff. Kurt R. McBride ¶ 5.)

### C. The School Board Meeting

As a result of the above-described search and seizure, a special meeting of the Eustice Farnham School Board was scheduled for January 5, 2000. Defendants Parrish and Vandenberg attended this meeting, at which time they stated that "individuals at the Bendler residence on the night in question were intoxicated to the point where they were near death" and "there were large quantities of vomit

in the outbuilding." Stagemeyer contends that these statements were false. (Filing 46, Aff. Douglas W. Stagemeyer ¶ 35.) As a result of these statements, members of the community demanded that plaintiff Douglas Stagemeyer resign as president of the Eustice Farnham School Board, which he did. (Filing 41, Amended Complaint ¶¶ 28 & 29.) .

## D. The Prosecution

As a result of the search and seizure performed by the above-described defendants, defendant Carter authored an investigative memorandum dated January 6, 2000, which falsely stated that Douglas Stagemeyer informed Carter that a juvenile had given false information to law enforcement on December 31, 1999, at Plum Creek Canyon # 12–C. (Filing 46, Aff. Douglas W. Stagemeyer ¶ 34.) Defendant Carter forwarded this memorandum to defendant Kurt McBride, Deputy County Attorney for Dawson County, Nebraska, and defendant Elizabeth Waterman, County Attorney for Dawson County, who on January 10, 2001, criminally charged Matthew Stagemeyer with one count of minor in possession of alcohol and Douglas Stagemeyer with one count of contributing to the delinquency of a minor, in violation of Neb.Rev.Stat. Ann. §§ 53–180.02 and 28–709, respectively. (Filing 41, Amended Complaint ¶ 32; Filing 21, Aff. Kurt R. McBride ¶¶ 7 & 9.) Defendant Kurt McBride, and not defendant Elizabeth Waterman, made the decision to file charges against Plaintiffs based upon interviews with Nebraska State Patrol Officers, review of their investigative reports, and exercise of his professional judgment that there was probable cause to believe Plaintiffs violated the law of the State of Nebraska. (Filing 21, Aff. Kurt R. McBride ¶¶ 6–7 & 9.) Of the eight adults who were present in the Bendler household on the night of the incident, only the Bendlers and Douglas Stagemeyer were

criminally charged. (Filing 46, Aff. Douglas W. Stagemeyer ¶ 5 & 33.)

On January 10, 2000, a member of a local newspaper informed Douglas Stagemeyer that criminal charges had been filed against him. When Stagemeyer contacted the Dawson County Attorney's office to verify this information, he was told "that said information was not made public." At 2:30 p.m. that day, camera crews attended a Eustis Farnham School Board meeting "in reference to above stated charges filed against [Douglas Stagemeyer]." Stagemeyer has reason to believe "that information was unlawfully leaked to the media by the Dawson County Attorney's Office and the Nebraska State Patrol, working in conjunction with each other, in order to unlawfully violate my civil rights and jeopardize my career." (Filing 46, Aff. Douglas W. Stagemeyer ¶ 28–31.)

On July 11, 2000, a Dawson County judge found plaintiff Matthew Stagemeyer not guilty on the criminal charge of minor in possession of alcohol, stating that although Matthew Stagemeyer was a minor who constructively possessed alcohol, "under the stipulated facts the Court can not conclude beyond a reasonable doubt that the Defendant was in a place other than his permanent place of residence ... [t]herefore, the Defendant is found not guilty." (Filing 21, Aff. Kurt R. McBride ¶ 8.)

On May 3, 2000, a Dawson County judge dismissed the criminal charges against Douglas Stagemeyer on Stagemeyer's Motion to Quash defendant McBride's amended complaint charging Douglas Stagemeyer with 19 counts of contributing to the delinquency of a minor. McBride filed the amended complaint in response to Stagemeyer's Request for Bill of Particulars as to the one-count complaint that had originally been filed against him. (Filing 21, Aff. Kurt R. McBride ¶ 9–11.) Plaintiff Doug-

las Stagemeyer believes the criminal charges against him were filed "in bad faith and with malicious intent because [he] would not plead guilty to the original complaint." (Filing 46, Aff. Douglas W. Stagemeyer ¶ 26.) On the same date the criminal charges against Douglas Stagemeyer were dismissed,

> Deputy County Attorney McBride gave an interview to NTV and said interview was aired that day on numerous television news programs. When discussing the fact that my Motion to Quash had been sustained by the County Court, and referring to me, Deputy County Attorney McBride stated that "adults allowing or encouraging juveniles to engage in behaviors such as consuming alcohol" will be charged.

(Filing 46, Aff. Douglas W. Stagemeyer ¶ 38.)

### E. Custom/Policy Evidence

Plaintiffs do not allege in their amended complaint (filing 41), nor do they establish in their affidavit (filing 46), that the allegedly unconstitutional actions taken by defendants Dawson County, Elizabeth Waterman, and Kurt McBride implemented or executed a policy, ordinance, regulation, or decision officially adopted and promulgated by a local government's officers, or that such actions were taken pursuant to a governmental custom. To the contrary, Defendants have submitted evidence establishing that Elizabeth Waterman—and not Kurt McBride—is the final decision-maker on policies, rules, and regulations of the Dawson County Attorney's Office, and that her office has not adopted or followed any policies, rules, regulations, or custom that Dawson County prosecutors should advise law enforcement officials to illegally search, seize, or arrest persons; maliciously prosecute persons; abuse the legal process; oppress persons under color of office; or otherwise violate any person's rights guaranteed by state or federal law. (Filing 21, Aff. Elizabeth F. Waterman ¶ 4; Filing 21, Aff. Kurt R. McBride ¶ 4.)

### F. Plaintiffs' Claims

Plaintiffs bring five causes of action against the defendants: (1) Violation of Civil Rights—specifically, that Defendants, without probable cause and with malice, violated Plaintiffs' freedom from illegal search, seizure, and detention, as secured by the Fourth, Sixth, and Fourteenth Amendments and by 42 U.S.C. §§ 1983 and 1988; (2) Section 1983 Malicious Prosecution—the defendants caused legal proceedings to be commenced against Plaintiffs with malice and without probable cause; (3) Malicious Prosecution (State Law); (4) Abuse of Process (State Law)—with malice and without probable cause, the defendants misused legal criminal process in prosecuting Plaintiffs under Nebraska criminal law; (5) Oppression Under the Color of Office (State Law)—acting as public servants or peace officers, the defendants willfully injured, deceived, harmed, or oppressed Plaintiffs or attempted to do so.

## II. STANDARDS

### A. Summary Judgment

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster*

*Co.*, 127 F.3d 649, 652–53 (8th Cir.1997), *cert. denied,* 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992), *cert. denied,* 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Qualified Immunity

Public officials are entitled to qualified immunity from liability for damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine whether defendants Waterman and McBride in their individual capacities are entitled to qualified immunity, the court first asks whether the plaintiffs have alleged the deprivation of a federal constitutional or statutory right. *Domina v. Van Pelt,* 235 F.3d 1091, 1096 (8th Cir.2000); *Sexton v. Martin,* 210 F.3d 905, 909 (8th Cir.2000). Second, the court determines whether the constitutional or statutory right was clearly established at the time of the alleged constitutional violations. *Sexton,* 210 F.3d at 909.

To be "clearly established" law,

the contours of the right [allegedly violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The official is not required to guess the direction of future legal decisions, but may rely on preexisting case law for guidance. Our circuit subscribes to a broad view of what constitutes clearly established law; [i]n the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits and district courts.

*Tlamka v. Serrell,* 244 F.3d 628, 634 (8th Cir.2001) (internal citations and quotation marks omitted).

If we determine that the law was clearly established at the relevant time, we consider whether, given the facts most favorable to the plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated

that right. [I]f the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, since a reasonably competent public official should know the law governing his conduct.

*Domina*, 235 F.3d at 1096 (internal quotations and citations omitted).

### III. ANALYSIS

#### A. First Cause of Action

Plaintiffs first allege that Defendants, acting in their individual and official capacities without probable cause and with malice, violated Plaintiffs' "freedom from illegal searches and seizure of their persons, papers, effects, and dwelling and their rights to freedom from unlawful detention," as secured by the "Fourth, Sixth, and Fourteenth Amendments of the Constitution of the United States, and under the laws of the United States and the State of Nebraska, particularly the Civil Rights Act, Title 42 U.S.C. Section 1983 and 1988." (Filing 41 ¶¶ 42–45.)

As a preliminary matter, I shall grant summary judgment in favor of the defendants on Plaintiffs' Sixth Amendment and 42 U.S.C. § 1988 claims. Plaintiffs have failed to allege or establish that Defendants violated Plaintiffs' Sixth Amendment rights to a speedy and public trial, an impartial jury in the state and district in which the crime was committed, to be informed of the nature and cause of the accusations against them, to be confronted with witnesses against them, to have compulsory process for obtaining witnesses in Plaintiffs' favor, or to have the assistance of counsel for their defense. Summary judgment in favor of Defendants on Plaintiffs' section 1988 claim must also be granted because 42 U.S.C. § 1988 does not create an independent federal cause of action for the violation of federal civil rights. *Moor v. County of Alameda*, 411 U.S. 693, 702–03 & 704 n. 17, 93 S.Ct. 1785, 36

L.Ed.2d 596 (1973) (collecting cases holding that § 1988 does not independently create federal cause of action for violation of federal civil rights); *Sarmiento v. Texas Bd. of Veterinary Med. Examiners*, 939 F.2d 1242, 1245 n. 4 (5th Cir.1991) (§ 1988 does not create independent federal cause of action, but is essentially procedural statute); *Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir.1988) (§ 1988 defines procedures pursuant to which remedies may be sought in civil rights actions; it does not create independent cause of action); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 n. 1 (11th Cir.1981) (same), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982).

Remaining in Plaintiffs' First Cause of Action, then, is their section 1983 claim that Defendants, in their official and individual capacities, violated Plaintiffs' rights under the Fourth Amendment, made applicable to the states through the Fourteenth Amendment's due process clause. Relying on *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality) (§ 1983 plaintiff could not rely on substantive due process to recover for criminal prosecution initiated without probable cause; suggesting that petitioner may have been able to raise a claim under the Fourth Amendment, but declining to express a "view as to whether petitioner's claim would succeed under the Fourth Amendment, since he has not presented that question"), and *Gallo v. City of Philadelphia*, 161 F.3d 217 (3rd Cir.1998) (pretrial restrictions of posting bond, attending court hearings, contacting pretrial services on weekly basis, and restricting travel constituted seizure within meaning of Fourth Amendment), Plaintiffs describe their Fourth Amendment claim against the defendants as follows.

Although they did not participate in the illegal search conducted in the early

morning hours of January 1, 2000 at the Bendler residence, the filing of criminal charges against the plaintiffs, and the resulting restrictions on their personal freedom, operates as a continuation of the illegal seizure. The plaintiffs were compelled, under threat of contempt of court and possible imprisonment, to attend court hearings and defend themselves against accusations which the defendants knew to be baseless. Being compelled under threat of force to be present at a particular time and place is no less of a loss of physical freedom than if the plaintiffs had actually been detained and taken to court by the police. The fourth amendment requires that for any seizure of a person there must be probable cause. The defendants clearly violated the plaintiffs [sic] right to be free from unreasonable search and seizure.

(Pls.' Br. Opp'n Dismissal of County Defs. at 2–3; Pls.' Br. Opp'n Mot. Summ. J. at 7–10.)

The Eighth Circuit Court of Appeals "has never held that pretrial restrictions"—such as posting bond, making court appearances, and answering charges—"constitute a Fourth Amendment seizure." *Technical Ordnance, Inc. v. United States,* 244 F.3d 641, 650–51 (8th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 819, 151 L.Ed.2d 702 (2002). Further, the Eighth Circuit Court of Appeals has specifically considered the *Albright* and *Gallo* cases on which Plaintiffs in this case rely, stating, "We cannot say that the *Albright* dictum amounts to a statement of clearly established law." *Technical Ordnance, Inc.,* 244 F.3d at 651. Therefore, defendants McBride and Waterman in their individual capacities are entitled to qualified immunity on the Fourth Amendment claim in Plaintiffs' First Cause of Action.

██ I shall also grant summary judgment in favor of defendants Dawson County and McBride and Waterman in their official capacities.

Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. Department of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (footnote omitted). Plaintiffs' official-capacity suits against defendants McBride and Waterman are simply another method of bringing claims against the entity with which they are affiliated—Dawson County. *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. 2018; *Parrish v. Luckie,* 963 F.2d 201, 203 n. 1 (8th Cir.1992). Therefore, Plaintiffs must allege that a policy or custom caused the claimed constitutional violations. *Rogers v. City of Little Rock,* 152 F.3d 790, 798 (8th Cir.1998) (citing *Monell* ).

Plaintiffs have failed to produce any evidence whatsoever of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers of Dawson County. Plaintiffs have also failed to submit evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the Dawson County Attorney's Office; of deliberate indifference or authorization of such misconduct by county policymakers after notice of such misconduct; or that an objectionable pattern or custom was the moving force

behind the defendants' alleged misconduct. Because Plaintiffs have failed to make a sufficient showing on the essential elements of their Fourth Amendment claim against Dawson County and McBride and Waterman in their official capacities, these defendants are entitled to judgment as a matter of law, and I shall grant the defendants' summary judgment motion on this section 1983 claim. *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223–24 (8th Cir.1994) (when record was "bereft of any evidence" of policy or custom of treating African–American employees differently than Caucasian employees, municipality cannot be liable under § 1983 and summary judgment should be granted in its favor).

### B. Second Cause of Action

■ Plaintiffs next bring a claim against Defendants for malicious prosecution under 42 U.S.C. § 1983. "It is well established in this circuit that '[a]n action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury.'" *Pace v. City of Des Moines,* 201 F.3d 1050, 1055 (8th Cir.2000) (quoting *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972, 977 (8th Cir.1993)). *See also Gordon v. Hansen,* 168 F.3d 1109, 1114 (8th Cir.1999) (claim for malicious prosecution not punishable under section 1983 because it does not allege constitutional injury). Hence, summary judgment shall be awarded in favor of all defendants on Plaintiffs' Second Cause of Action.

### C. State Law Claims

Plaintiffs' third, fourth, and fifth causes of actions are ones for malicious prosecution, abuse of process, and "oppression under the color of office" under state law.

### 1. Dawson County and Defendants in Official Capacities (Malicious Prosecution & Abuse of Process Claims)

■ The Political Subdivisions Tort Claims Act, Neb.Rev.Stat. Ann. §§ 13–901 to 13–926 (Michie 1995 & Lexis Cum.Supp. 2001), provides uniform procedures for the bringing of tort claims against all political subdivisions. Specifically, the Act states that:

> [N]o political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and ... no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act.

Neb.Rev.Stat. Ann. § 13–902 (Michie 1995). The term "tort claim" is defined in the Act as "any claim against a political subdivision for money only on account of ... personal injury ... caused by the ... wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage...." Neb.Rev.Stat. Ann. § 13–903 (Lexis Cum.Supp.2001). The Act specifically excludes from its coverage "[a]ny claim arising out of ... malicious prosecution [or] abuse of process...." Neb.Rev.Stat. Ann. § 13–910(7) (Lexis Cum.Supp.2001).

Inasmuch as Plaintiffs' state-law claims are asserted against Dawson County, a political subdivision of the State of Nebraska, and defendants Waterman and McBride in their official capacities as county attorneys for the political subdivision, Plaintiffs' claims are governed by the Act. Because section 13–910(7) specifically pro-

vides that liability imposed by the Act shall not apply to claims for malicious prosecution and abuse of process, section 13–910(7) provides Dawson County and defendants Waterman and McBride in their official capacities "a complete defense" to Plaintiffs' claims for malicious prosecution and abuse of process. *Hatcher v. Bellevue Volunteer Fire Dep't,* 262 Neb. 23, 628 N.W.2d 685, 695 (2001). Hence, summary judgment shall be granted in favor of Dawson County and defendants Waterman and McBride in their official capacities on Plaintiffs' state-law claims for malicious prosecution and abuse of process.

### 2. Defendants in Individual Capacities (Malicious Prosecution & Abuse of Process Claims)

■ Defendants in their individual capacities claim they are immune from Plaintiffs' state-law claims for malicious prosecution and abuse of process because the liability imposed by the Political Subdivisions Tort Claims Act does not include any claims "arising out of . . . malicious prosecution [or] abuse of process." Neb.Rev. Stat. Ann. § 13–910(7). Plaintiffs, in turn, argue that the Act does not govern their tort claims against defendants Waterman and McBride individually, for they were acting *outside* the scope of their employment in unlawfully prosecuting Plaintiffs and in abusing the legal process during such prosecution, noting that the Act defines "tort claim" as "any claim against a political subdivision for money only on account of . . . personal injury . . . caused by the . . . wrongful act or omission of any employee of the political subdivision, while acting *within the scope of his or her office or employment,* under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage. . . ." Neb.Rev.Stat. Ann. § 13–903 (emphasis added).

The evidence establishes that Deputy County Attorney Kurt McBride criminally charged Plaintiffs after reviewing police reports regarding the incident and applying the standard that "as a prosecutor, [he] may not file criminal charges unless in [his] professional judgment [he has] probable cause to believe that an offense has occurred and that there exists a reasonable likelihood that the violation could be proven in a court of law." The evidence also establishes that McBride amended the original complaint against Douglas Stagemeyer to include 19 minors with whom Stagemeyer was being charged for contributing to their delinquency. (Filing 21, Aff. Kurt R. McBride ¶¶ 6 & 10.) Clearly, the acts of filing criminal charges against Plaintiffs after reviewing the investigative information that had been provided to them and amending the criminal complaint to conform to the evidence were ones within the scope of the defendant county attorneys' office or employment. *See Cole v. Wilson,* 10 Neb.App. 156, 627 N.W.2d 140, 144 (2001) (in arrestee's action alleging personal injury resulting from actions and inactions of public defender that led to imprisonment, court found such actions and inactions within scope of defendant's employment with public defender's office; "Although Cole claims that he is bringing this lawsuit against [the public defender] in his individual capacity, all of the allegations contained in Cole's petition . . . relate to [the defendant's] performance of his duties as a *public defender.* The requirements of the Political Subdivisions Tort Claims Act apply where an individual is sued in his or her individual capacity, but is performing within the scope of employment.").

■ Therefore, the Political Subdivisions Tort Claims Act governs Plaintiffs' claims for malicious prosecution and abuse of process against Defendants individually. As with Plaintiffs' official-capacity claims, because section 13–910(7) specifically pro-

vides that liability imposed by the Act shall not apply to claims for malicious prosecution and abuse of process, summary judgment must be granted in favor of defendants Waterman and McBride individually on Plaintiffs' state-law claims for malicious prosecution and abuse of process.[3]

### 3. Oppression Claim

■ Plaintiffs' Fifth Cause of Action attempts to allege a violation of Neb.Rev. Stat. Ann. § 28–926 (Michie 1995). This is a criminal statute which provides for treble damages if a public servant or peace officer commits the misdemeanor offense of "oppression under color of office." It is highly questionable whether section 28–926 authorizes a civil cause of action seeking treble damages to be brought under its provisions. *C.f. LaBenz Trucking, Inc. v. Snyder,* 246 Neb. 468, 519 N.W.2d 259, 261–62 (1994) (in case where plaintiffs waived recovery of treble damages and requested only actual damages under section 28–926, court held statute to be "penal in nature" and stated, "A statute which imposes liability for actual damages and additional liability for the same act exacts a penalty. Plaintiffs cite no authority, nor has our research discovered any, to support the proposition that a party may convert a purely penal statute into a remedial one simply as the election of the party."). I find that in this case, where Plaintiffs have specifically requested treble damages (filing 41 ¶ 68), section 28–926 does not support a civil cause of action.

■ Even if section 28–926 did support a civil cause of action in a case like this, the statute would be unconstitutional to the extent it allowed recovery of treble damages unrelated to actual damages.[4] *See Abel v. Conover,* 170 Neb. 926, 104 N.W.2d 684, 690 (1960) (treble damages provision for deceit by attorney ruled unconstitutional; "The effect of the statute is to authorize the actual compensatory damages to be determined, and then arbitrarily requires the defendant to pay to the plaintiff three times that sum. It therefore exceeds compensatory damages three times over and is a penalty prohibited by ... Article VII, section 5, of the Constitution of Nebraska.").[5]

Accordingly, summary judgment shall be granted in Defendants' favor on Plain-

---

3. Alternatively, the individual defendants' motion for summary judgment should be granted on this claim because the county attorneys' judgment that there existed probable cause to believe that crimes were committed by Plaintiffs and that there was a reasonable likelihood that such offenses could be proven in a court of law was "the exercise or performance of ... a discretionary function or duty on the part of ... an employee of the political subdivision, whether or not the discretion is abused." Neb.Rev.Stat. Ann. § 13–910(2). *See Larson ex rel. Larson v. Miller,* 76 F.3d 1446, 1457 (8th Cir.1996) (whether or not reasonable cause to believe child was subjected to abuse within meaning of child-abuse-reporting law required exercise of discretion and personal judgment, barring plaintiffs' claim under the Nebraska Political Subdivisions Tort Claims Act that school district failed to comply with such statutes).

4. Notice that the constitutionality of a state statute has been drawn into question need not be given to the state attorney general since several of the defendants are state employees and are represented by the state attorney general's office. Fed.R.Civ.P. 24(c) ("When the constitutionality of any statute of a State affecting the public interest is drawn in question in any action in which that State or any agency, officer, or employee thereof is not a party, the court shall notify the attorney general of the State as provided in Title 28, U.S.C. § 2403.").

5. I have no occasion to decide whether section 28–926 is unconstitutional to the extent it allows the awarding of treble damages in criminal litigation.

tiffs' claim for oppression under color of office.

IT IS ORDERED:

1. Defendants' Fed.R.Civ.P. 12(b)(6) motion—which has been converted to one for summary judgment (filing 20)—and Defendants' separate motion for summary judgment (filing 36) are granted as set forth below:

   a. The motions for summary judgment (filing 20 & 36) filed by Dawson County, Kurt McBride in his individual and official capacities, and Elizabeth Waterman in her individual and official capacities are granted as to Plaintiffs' First Cause of Action (Violation of Civil Rights), and defendants McBride and Waterman individually are entitled to qualified immunity on the Fourth Amendment claim contained in the First Cause of Action.

   b. The motions for summary judgment (filing 20 & 36) filed by Dawson County, Kurt McBride in his individual and official capacities, and Elizabeth Waterman in her individual and official capacities are granted as to Plaintiffs' Second (Section 1983 Malicious Prosecution), Third (Malicious Prosecution—State Law), Fourth (Abuse of Process—State Law), and Fifth (Oppression Under the Color of Office—State Law) Causes of Action.

2. Because all claims have been dismissed against defendants Dawson County, Kurt McBride in his individual and official capacities, and Elizabeth Waterman in her individual and official capacities, such defendants are no longer parties in this case.

3. Final judgment shall be entered following resolution of the claims remaining against several other defendants (*see* Filing 50, at 19 & 20).